UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SEBASTIAN AWARD,
    Plaintiff,

v.      CASE NO. 3:15-cv-175 (DJS)

SCOTT WISNER, ET AL.,
    Defendants.

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Sebastian Award ("Award"), commenced this civil rights action against State Police Troopers, Detective Scott Wisner ("Wisner") and Sergeant Keith Graham ("Graham"). The plaintiff contends that the defendants used excessive force against him in the course of a police pursuit culminating in his arrest on April 8, 2013. The defendants have filed a motion for summary judgment. For the reasons that follow, defendants' motion is granted.

I.     <u>Standard of Review</u>

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009). The moving party may satisfy his burden "by showing—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He must present such evidence as would allow a jury to find in his favor to defeat the motion for summary judgment. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

1

The nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

II.  Facts[1]

On April 8, 2013, Wisner heard a radio dispatch that officers from the Old Saybrook Police Department were engaged in a high speed chase with suspects in an armed robbery. Award was driving the suspects' car. He drove several miles on two-lane secondary roads through populated suburban areas at high rates of speed, at times in excess of 80 mph, and did not heed the lights and sirens of the pursuing police vehicles.

Upon learning that the suspects were heading in his direction, Wisner, who was just completing his shift, decided to activate his siren and lights, pull onto the road in front of the suspects' car, and try to box them in with the pursuing police vehicles, thereby ending the pursuit. While waiting at the side of the road for the suspects to approach his location, Wisner placed his gun and holster on the seat between his legs.

Wisner saw the suspects' car and police vehicles approaching and pulled onto the road in front of the suspects' car. Award tried to pass defendant Wisner's vehicle. At this time, Wisner was braking and Award was accelerating. The cars collided and the suspects' car drove up over the left rear of Wisner's vehicle. Both vehicles went off the road. The suspects' car flipped over and landed on the passenger side of the car. Wisner's vehicle remained upright. When they came to a stop, the front ends of the vehicles were touching, and the rear ends were a few feet apart, in a tight inverted v-shape. The sunroof of the suspects' car was facing the driver's window of Wisner's vehicle. The glass from the sunroof had broken during the crash and was no longer in place.

---

[1] The facts are taken from the parties' Local Rule 56(a) Statements and exhibits.

Immediately following the crash, Wisner located his gun on the floor and bent over to retrieve it. While he was doing so, the passenger in the suspects' car fired several shots into Wisner's vehicle. One shot hit Wisner in the left arm and shoulder area. Another grazed his left ear. When Wisner unholstered his gun and sat up to return fire, he saw a man pointing a revolver at him through the sunroof of the suspects' car. The passenger had not been wearing a seat belt and was sitting on the passenger door looking out through the open sunroof. Wisner discharged seven of the nine bullets in his gun toward the man pointing the gun at him. One of the bullets hit the passenger in the chest, others hit his foot and ankle. One bullet struck Award, who was suspended in his seat belt, in the back. A large portion of that bullet remains lodged in Award's back.

Graham was the first State Trooper to respond to the scene and the first person to approach the vehicles. As he left his vehicle he heard shots being fired. Graham approached the area between the two vehicles with his gun drawn and stood near the rear wheel of Wisner's vehicle. He was able to see into the suspects' car from his position and ordered the suspects to show their hands. Other State Troopers also had guns aimed at the suspects. Upon ascertaining that Wisner had been shot, Graham handed Wisner's gun to other troopers who then extracted Wisner from his vehicle through the passenger door and took him to a clinic for treatment of his gunshot wounds. Although Graham repeatedly ordered the passenger not to touch the revolver, which was located on the ground within his reach, the passenger picked up the revolver. Graham fired one shot from his gun which struck the passenger's right hand and broke the wooden butt of the revolver. The bullet fired by Graham was later located on the ground and matched with Graham's gun.

The passenger was handcuffed and both suspects were removed from the car. Award was

subsequently transported by helicopter to Hartford Hospital for medical care. The passenger was transported to a medical center where he was pronounced dead.

III. Discussion

In his complaint, the plaintiff alleges that the defendants used excessive force against him, defendant Wisner by ramming his car and forcing it off the road, and defendant Graham by shooting him in the back. On September 12, 2016, the plaintiff filed a document entitled "The Plaintiff's Alternative Statement of Claim" in which he purports to present an alternative claim pursuant to Rule 8(d), Fed. R. Civ. P. *See* ECF No. 79. Rule 8 sets forth rules for pleadings, *i.e.*, the manner in which the claims should be presented in the complaint. Indeed, the section cited by the plaintiff requires that pleadings be concise and direct and permits alternative statements of a claim in the pleading. Fed. R. Civ. P. 8(d). The term "pleading" has a specific definition. Rule 7(a) provides that, as relevant here, only a complaint is a pleading. Fed. R. Civ. P. 7(a). Thus, if the plaintiff wanted to include an alternative statement of claim, he was required to amend his complaint. He did not do so. Thus, the plaintiff's alternative claim, that defendant Wisner uses excessive force against him by shooting him, was not raised in accordance with the requirements of the Federal Rules of Civil Procedure. As the plaintiff is proceeding pro se, however, the Court will consider this alternate claim as well as the claims included in the complaint.

Claims that a police officer used excessive force in the course of an arrest or other seizure are considered under the reasonableness standard of the Fourth Amendment. To prevail on an excessive force claim against a police officer, the plaintiff must show that the amount of force used was objectively unreasonable either as to when or how the force was applied, and that, as a result of the use of force, he suffered some compensable injury. *See Graham v. Connor,* 490

U.S. 386, 396 (1989); *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004). Whether a given quantum of force is excessive depends on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396, 397.

Award contends that Graham shot him. The firearms report submitted by the defendants shows that Graham fired only one shot. *See* ECF No. 95-27 at 2. The bullet from Graham's gun was found on the ground. *See* ECF No. 95-17 at 2, 5. Since a large portion of the bullet that struck Award remains lodged in his body, *see* ECF No. 111-17 at 1-2, Graham could not have been the person who shot the plaintiff.

In opposition to the motion for summary judgment, the plaintiff offers his own affidavit stating that Graham shot him. "'When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" *Vega v. Rell*, 611 F. App'x 22, 25-26 (2d Cir. 2015) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)). Here, the firearms report on Graham's gun is conclusive. Only one shot was fired and the bullet was recovered. The plaintiff has provided no objective evidence in support of his contention. Therefore, he has not established an issue of fact regarding this claim. The defendants' motion for summary judgment is granted as to the claim against defendant Graham.

Award was shot while Wisner was returning fire after being shot by the passenger. A police officer may use deadly force when the officer has probable cause to believe that a threat of serious physical harm to himself exists. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Here, Wisner knew from the police radio reports that the suspects were armed robbers and he was returning fire after being shot at close range. Thus, it was reasonable for Wisner to use deadly force in response. There is no evidence that Wisner intentionally shot the plaintiff. Courts considering similar claims have held that where an unarmed person is shot during an exchange of fire between a police officer and an armed suspect, the unarmed person does not have a claim for use of excessive force. *See Jackson v. Pena*, 28 F. Supp. 3d 423, 430-31 (D. Md. 2014) (police had reasonable cause to use deadly force following exchange of gunfire; an unarmed person shot during the exchange had no Fourth Amendment cause of action for use of excessive force because the shooting was reasonable under the circumstances). Nor does Wisner's conduct support a Fourth Amendment claim of unreasonable seizure. *See Medeiros v. O'Connell*, 150 F.3d 164, 168 (2d Cir. 1998) ("the accidental shooting of a hostage or innocent bystander" is not a "seiz[ure] within the meaning of the Fourth Amendment"). Thus, Award cannot state a cognizable claim for excessive force against Wisner regarding his shooting. The defendants' motion for summary judgment is granted as to this claim.

Award also argues that Wisner used excessive force against him by ramming his car and forcing it off the road. Award submits two lay witness statements in support of his contention. Neither statement does so. The first states only that the cars collided. *See* ECF No. 111-8 at 2 ("I saw the blue metallic vehicle move from the northbound lane into the southbound lane and attempt to pass the navy blue vehicle. As this happened, I saw the navy blue vehicle and the blue metallic vehicle make contact with each other."). The second appears to contradict Award's

version of the events. *See* ECF No. 111-9 ("When I looked outside I saw two cars traveling north on Rt 153. I then saw the car in the rear, a bright blue car, almost climb on top of the car in front of it and then they both went down the embankment across the street from my house").

Further, the data from the airbags in the two vehicles shows that Wisner was braking and Award was accelerating when the cars made contact. The accident reconstruction report, based on the data from the airbags, physical evidence at the accident scene, and review of video footage of the accident, found that Award struck Wisner's vehicle while trying to pass the vehicle. *See* ECF No. 95-16, at 5. Award was charged with motor vehicle violations in connection with the chase and crash and entered a plea of nolo contendere to the charges. Award has provided no objective evidence showing that Wisner caused the crash. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted); *see also Makhoul v. Watt, Tieder, Hoffar & Fitzgerald, L.L.P.*, 662 F. App'x 33, 35 (2d Cir. 2016) ("Given the overwhelming documentary evidence to the contrary, the District Court rightly found that [the plaintiff's] affidavit is so blatantly contradicted by the record evidence that no reasonable jury could believe its version of events."). Thus, there is no genuine issue as to Award's claim that defendant Wisner used excessive force against him by hitting his car.

Even if Wisner had caused the crash, his actions would not have risen to the level of a constitutional violation. In *Scott v. Harris*, 550 U.S. 372 (2007), the Supreme Court addressed a case with facts similar to those in this action. In *Scott*, the respondent Harris engaged police in a high-speed chase on a two-lane road. After following Harris for a number of miles, Deputy Scott attempted a maneuver, bumping the rear of Harris's vehicle with the push bar on the front of his vehicle, which was intended to cause a fleeing vehicle to spin out and stop. Harris, however, lost

control of his vehicle which ran down an embankment, overturned and crashed. *Id.* at 374-75. The Supreme Court held that Scott's actions were reasonable under the circumstances and did not violate Harris's constitutional rights: "A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." *Id.* at 386.

Here, Award was pursued by police for many miles. He drove at high rates of speed, crossed a double yellow line, and ran red lights. When Wisner slowed down to try to get him to stop, Award tried to pass. There is no evidence to support Award's contention that Wisner deliberately rammed the front of his car. Photos of Wisner's car show damage to the left rear quarter panel and door. *See* ECF No. 95-12 at 8-9. Even if Wisner had caused his vehicle to contact the plaintiff's car, as in *Scott*, Wisner's actions were reasonable. Thus, Wisner's actions in attempting to stop Award's car did not constitute use of excessive force. *See Plumhoff v. Rickard*, ___ U.S. ___, 134 S. Ct. 2012, 2021-22 (2014) (police officers acted reasonably in using deadly force to end a high-speed chase). The defendants' motion for summary judgment is granted as to this claim.

IV. Conclusion

Defendants' motion for summary judgment [**ECF No. 95**] is **GRANTED.** The Clerk is

directed to enter judgment in favor of the defendants and close this case.

SO ORDERED this   23rd    day of  August, 2017.


	____/s/  DJS_____
	                    Dominic J. Squatrito
	                United States District Judge